ATP TOUR, INC., Etienne De Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic, Appellants,

v.

DEUTSCHER TENNIS BUND (German Tennis Federation), Rothenbaum Sport GmbH, and Qatar Tennis Federation, Appellees.

No. 534, 2013.

Supreme Court of Delaware.

Submitted: Feb. 19, 2014.
Decided: May 8, 2014.

Philip Trainer, Jr., Esquire, Toni–Ann Platia, Esquire, Ashby & Geddes, Wilmington, Delaware; Of Counsel: Bradley I. Ruskin, Esquire (argued), Charles S. Sims, Esquire, Jennifer R. Scullion, Esquire and Jordan B. Leader, Esquire, Proskauer Rose LLP, New York, New York, for Appellants.

David M. Powlen, Esquire and Kevin G. Collins, Esquire, Barnes & Thornburg LLP, Wilmington, Delaware; Of Counsel: Robert D. MacGill, Esquire (argued), Peter J. Rusthoven, Esquire and Hamish S. Cohen, Esquire, Barnes & Thornburg LLP, Indianapolis, Indiana, for Appellees.

Before STRINE, Chief Justice,* HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

This Opinion constitutes the Court's response to four certified questions of law concerning the validity of a fee-shifting provision in a Delaware non-stock corporation's bylaws. The provision, which the directors adopted pursuant to their charter-delegated power to unilaterally amend the bylaws, shifts attorneys' fees and costs to unsuccessful plaintiffs in intra-corporate litigation. The United States District Court for the District of Delaware found that the bylaw provision's validity was an open question under Delaware law and certified four questions to this Court, asking it to decide whether, and under what circumstances, such a provision is valid and enforceable. Although we cannot directly address the bylaw at issue, we hold that fee-shifting provisions in a non-stock corporation's bylaws can be valid and enforceable under Delaware law. In addition, bylaws normally apply to all members of a non-stock corporation regardless of whether the bylaw was adopted before or after the member in question became a member.

## FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are drawn from the District Court's Certification of Questions of Law.[1] ATP Tour, Inc. (ATP) is a Delaware membership corporation that operates a global professional men's tennis tour (the Tour). Its members include professional men's tennis players and entities that own and operate professional men's tennis tournaments. Two of those entities are Deutscher Tennis Bund (DTB) and Qatar Tennis Federation (QTF, and collectively, the Federations). ATP is governed by a seven-member board of directors, of which three are elected by the tournament owners, three are elected by the player members, and

---

* Formerly Chancellor as of the date of this argument and designated pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

1. Certification of Questions of Law from the United States District Court for the District of Delaware (Oct. 4, 2013) [hereafter "Certification"].

the seventh directorship is held by ATP's chairman and president.

Upon joining ATP in the early 1990s, the Federations "agreed to be bound by ATP's Bylaws, as amended from time to time."[2] In 2006, the board amended ATP's bylaws to add an Article 23, which provides, in relevant part:

(a) In the event that (i) any [current or prior member or Owner or anyone on their behalf ("Claiming Party")] initiates or asserts any [claim or counterclaim ("Claim")] or joins, offers substantial assistance to or has a direct financial interest in any Claim against the League or any member or Owner (including any Claim purportedly filed on behalf of the League or any member), and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the League and any such member or Owners for all fees, costs and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses) (collectively, "Litigation Costs") that the parties may incur in connection with such Claim.[3]

In 2007, ATP's board voted to change the Tour schedule and format. Under the board's "Brave New World" plan, the Hamburg tournament, which the Federations own and operate, was downgraded from the highest tier of tournaments to the second highest tier, and was moved from the spring season to the summer season. Displeased by these changes, the Federations sued ATP and six of its board members in the United States District Court for the District of Delaware, alleging both federal antitrust claims and Delaware fiduciary duty claims.

After a ten-day jury trial, the District Court granted ATP's and the director defendants' motion for judgment as a matter of law on all of the fiduciary duty claims, and also on the antitrust claims brought against the director defendants. The jury then found in favor of ATP on the remaining antitrust claims. Thus, the Federations did not prevail on any claim. ATP then moved to recover its legal fees, costs, and expenses under Rule 54 of the Federal Rules of Civil Procedure. ATP grounded its motion on Article 23.3(a) of ATP's bylaws. The District Court denied ATP's Rule 54 motion because it found Article 23.3(a) to be contrary to the policy underlying the federal antitrust laws.[4] The District Court effectively ruled that "federal law preempts the enforcement of fee-shifting agreements when antitrust claims are involved."[5]

ATP appealed, and the United States Court of Appeals for the Third Circuit vacated the District Court's order. The Third Circuit found that the District Court should have decided whether Article 23.3(a) was enforceable as a matter of Delaware law before reaching the federal

---

**2.** Certification at 4.

**3.** *Id.* at 4–5.

**4.** *Deutscher Tennis Bund v. ATP Tour, Inc.,* 2009 WL 3367041, at *4 (D.Del. Oct. 19, 2009).

**5.** *Deutscher Tennis Bund v. ATP Tour Inc.,* 480 Fed.Appx. 124, 126 (3d Cir.2012).

preemption question.[6] On remand, the District Court reasoned that the question of Article 23.3(a)'s enforceability was a novel question of Delaware law that should be addressed in the first instance by this Court.[7] The District Court certified the following four questions of law:

1. May the Board of a Delaware non-stock corporation lawfully adopt a bylaw (i) that applies in the event that a member brings a claim against another member, a member sues the corporation, or the corporation sues a member (ii) pursuant to which the claimant is obligated to pay for "all fees, costs, and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses)" of the party against which the claim is made in the event that the claimant "does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought"?

2. May such a bylaw be lawfully enforced against a member that obtains no relief at all on its claims against the corporation, even if the bylaw might be unenforceable in a different situation where the member obtains some relief?

3. Is such a bylaw rendered unenforceable as a matter of law if one or more Board members subjectively intended the adoption of the bylaw to deter legal challenges by members to other poten-

tial corporate action then under consideration?

4. Is such a bylaw enforceable against a member if it was adopted after the member had joined the corporation, but where the member had agreed to be bound by the corporation's rules "that may be adopted and/or amended from time to time" by the corporation's Board, and where the member was a member at the time that it commenced the lawsuit against the corporation? [8]

We accepted the certified questions based on principles of comity,[9] and will address each question in turn.

## DISCUSSION

1. Fee-shifting bylaws are permissible under Delaware Law.

■ The first certified question asks whether the board of a Delaware non-stock corporation [10] may lawfully adopt a bylaw that shifts all litigation expenses to a plaintiff in intra-corporate litigation who "does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought." [11] Under Delaware law, a corporation's bylaws are "presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws." [12] To be facially valid, a bylaw must be authorized by the Delaware General Corporation Law (DGCL),[13] consistent with the corporation's

---

**6.** *Id.* at 127–28.

**7.** Certification at 7–8.

**8.** *Id.* at 9.

**9.** *See State Farm Mut. Auto. Ins. Co. v. Dann,* 953 A.2d 127, 128 (Del.2001) (accepting certified questions from the District Court "as a matter of comity").

**10.** Under 8 *Del. C.* § 114, the provisions of the Delaware General Corporation Law, including § 109(b), apply to non-stock corpora-

tions and all references to the stockholders of a corporation are deemed to apply to the members of a non-stock corporation.

**11.** Certification at 9.

**12.** *See Frantz Mfg. Co. v. EAC Indus.,* 501 A.2d 401, 407 (Del.1985).

**13.** 8 *Del. C.* Ch. 1.

certificate of incorporation, and its enactment must not be otherwise prohibited.[14] That, under some circumstances, a bylaw might conflict with a statute, or operate unlawfully, is not a ground for finding it facially invalid.

A fee-shifting bylaw, like the one described in the first certified question, is facially valid. Neither the DGCL nor any other Delaware statute forbids the enactment of fee-shifting bylaws. A bylaw that allocates risk among parties in intra-corporate litigation would also appear to satisfy the DGCL's requirement that bylaws must "relat[e] to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees."[15] The corporate charter could permit fee-shifting provisions, either explicitly or implicitly by silence.[16] Moreover, no principle of common law prohibits directors from enacting fee-shifting bylaws.

■ Delaware follows the American Rule, under which parties to litigation generally must pay their own attorneys' fees and costs.[17] But it is settled that contracting parties may agree to modify the American Rule and obligate the losing party to pay the prevailing party's fees.[18] Because corporate bylaws are "contracts among a corporation's shareholders,"[19] a fee-shifting provision contained in a nonstock corporation's validly-enacted bylaw would fall within the contractual exception to the American Rule. Therefore, a fee-shifting bylaw would not be prohibited under Delaware common law.

■ Whether the specific ATP fee-shifting bylaw is enforceable, however, depends on the manner in which it was adopted and the circumstances under which it was invoked. Bylaws that may otherwise be facially valid will not be enforced if adopted or used for an inequitable purpose. In the landmark *Schnell v. Chris–Craft Industries*[20] decision, for example, this Court set aside a board-adopted bylaw amendment that moved up the date of an annual stockholder meeting to a month earlier than the date originally scheduled.[21] The Court found that the board's purpose in adopting the bylaw and moving the meeting was to "perpetuat[e] itself in office" and to "obstruct[ ] the legitimate efforts of dissident stockholders in the exercise of their rights to undertake a proxy contest against management."[22] The *Schnell* Court famously stated that "inequitable action does not become permissible simply because it is legally possible."[23]

**14.** 8 *Del. C.* § 109(b) ("The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation . . . ."); *see also Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 398 (Del.2010) ("[A] bylaw provision that conflicts with the DGCL is void.").

**15.** 8 *Del. C.* § 109(b).

**16.** 8 *Del. C.* § 102(a) does not require that fee-shifting provisions be included in the charter.

**17.** *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del.2007) ("Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs.").

**18.** *See Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1218 (Del.2013) ("'An exception to [the American R]ule is found in contract litigation that involves a fee shifting provision.'") (citation omitted).

**19.** *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del.2010).

**20.** 285 A.2d 437 (Del.1971).

**21.** *Id.* at 438–40.

**22.** *Id.* at 439.

**23.** *Ibid.*

More recently, in *Hollinger International, Inc. v. Black*,[24] the Court of Chancery addressed bylaw amendments, enacted by a controlling shareholder, that prevented the board "from acting on any matter of significance except by unanimous vote" and "set the board's quorum requirement at 80%," among other · changes.[25] The Court of Chancery found, and this Court agreed, that the bylaw amendments were ineffective because they "were clearly adopted ·for an inequitable purpose and have an inequitable effect."[26] That finding was based on an extensive review of the facts surrounding the controller's decision to amend the bylaws.[27]

Conversely, this Court has upheld similarly restrictive bylaws that were enacted for proper purposes. In *Frantz Manufacturing Co. v. EAC Industries*,[28] a majority stockholder amended the corporation's bylaws by written consent in order to "limit the [ ] board's anti-takeover maneuvering after [the stockholder] had gained control of the corporation."[29] The amended bylaws, like those invalidated in *Hollinger*, increased the board quorum requirement and mandated that all board actions be unanimous. The Court found that the bylaw amendments were "a permissible part of [the stockholder's] attempt to avoid its disenfranchisement as a majority shareholder" and, thus, were "not inequitable under the circumstances."[30]

■ In sum, the enforceability of a facially valid bylaw may turn· on the circumstances surrounding its adoption and use.[31] The Certification does not provide the stipulated facts necessary to determine whether the ATP bylaw was enacted for a proper purpose or properly applied. Moreover, because certifications by their nature only address questions of law,[32] we are able to say only that a bylaw of the type at issue here is facially valid, in the sense that it is permissible under the DGCL, and that it may be enforceable if adopted by the appropriate corporate procedures and for a proper corporate purpose.

2. The bylaw, if valid and enforceable, could shift fees if a plaintiff obtained no relief in the litigation.

The second certified question essentially asks whether a more limited version of the ATP bylaw would be valid. Article 23.3(a) states that it can be invoked against any plaintiff who does not obtain a judgment "that substantially achieves, in substance

**24.** 844 A.2d 1022 (Del.Ch.2004), *aff'd sub. nom., Black v. Hollinger Int'l Inc.*, 872 A.2d 559 (Del.2005).

**25.** *Id.* at 1077.

**26.** *Id.* at 1080.

**27.** *See id.* at 1030–57.

**28.** 501 A.2d 401 (Del.1985).

**29.** *Id.* at 407.

**30.** *Id.* at 407, 409.

**31.** *See, e.g., Stroud v. Grace*, 606 A.2d 75, 83 (Del.1992) (upholding bylaw amendments against claims of entrenchment because "there [was] no evidence that the board adopted the Amendments as defensive measures," and the "record clearly indicate[d]" that "there was no threat to the board's control"); *Datapoint Corp. v. Plaza Sec. Co.*, 496 A.2d 1031, 1036 (Del.1985) (invalidating board-adopted bylaw amendments because the "underlying intent" behind them was "to give management an opportunity distribute 'opposing solicitation material' " to challenge written stockholder consents); *In re Osteopathic Hosp. Ass'n of Del.*, 191 A.2d 333, 336 (Del.Ch.1963), *aff'd*, 195 A.2d 759 (Del.1963) (invalidating a membership bylaw because a "change of so fundamental a character" to the "structure of this rather unique organization" was improper without the consent of "the group whose interests are adversely affected," *i.e.*, the association's members).

**32.** Supr. Ct. R. 41(a).

and amount, the full remedy sought." [33] Since there might be difficulty applying the "substantially achieves" standard, the District Court asks whether the bylaw would be enforceable, at least, where plaintiff obtains "no relief at all against the corporation." [34] Subject to the limitations set forth in our answer to the first certified question, we answer the second question in the affirmative.

3. The bylaw would be unenforceable if adopted for an improper purpose.

■■■■ The third certified question asks whether the bylaw is "rendered unenforceable as a matter of law if one or more Board members subjectively intended the adoption of the bylaw to deter legal challenges by members to other potential corporate action then under consideration." [35] Again, we are unable to respond fully. Legally permissible bylaws adopted for an improper purpose are unenforceable in equity. The intent to deter litigation, however, is not invariably an improper purpose. Fee-shifting provisions, by their nature, deter litigation. Because fee-shifting provisions are not *per se* invalid, an intent to deter litigation would not necessarily render the bylaw unenforceable in equity.

4. Generally, a bylaw amendment is enforceable against members who join the corporation before its enactment.

■■■ The fourth certified question asks whether a fee-shifting bylaw provision is enforceable against members who joined the corporation before the provision's enactment and who agreed to be bound by rules "that may be adopted and/or amended from time to time" by the board.[36] Assuming the provision is otherwise valid and enforceable, as a statutory matter the answer is yes. The DGCL permits a corporation to, "in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors." [37] If directors are so authorized, "stockholders will be bound by bylaws adopted unilaterally by their boards." [38]

## CONCLUSION

Under Delaware law, a fee-shifting bylaw is not invalid *per se,* and the fact that it was adopted after entities became members will not affect its enforceability. But we cannot say, as a matter of law, that the ATP fee-shifting provision was adopted for a proper purpose or is enforceable in the circumstances presented.

33. Certification at 5.

34. *Id.* at 9.

35. *Ibid.*

36. *Ibid.*

37. 8 *Del. C.* § 109(a).

38. *Boilermakers Local 154 Ret. Fund v. Chevron Corp.,* 73 A.3d 934, 956 (Del.Ch.2013); *see also Kidsco Inc. v. Dinsmore,* 674 A.2d 483, 492–93 (Del.Ch.1995), *aff'd,* 670 A.2d 1338 (Del.1995).